IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TONY WAYNE PRITCHETT                                              PLAINTIFF

v.                              Civil No. 4:19-cv-04084

SERGEANT B. GRIFFIE, Miller County
Detention Center ("MCDC"); CORPORAL
B. SMITH, MCDC; SERGEANT D. ROGERS,
MCDC; NURSE S. KING, MCDC; NURSE
CHELSEY, MCDC; and NURSE CATHERINE, MCDC                          DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro se* by Plaintiff, Tony Wayne Pritchett, under 42 U.S.C.

§ 1983.  Before the Court is a Motion for Summary Judgment filed by Defendants Chelsey Foster,

Steven King, and Catherine Adams. (ECF No. 20).  Plaintiff has filed a Response.  (ECF No. 23).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey,

Chief United States District Judge, referred this case to the undersigned for the purpose of making

a Report and Recommendation.

### I.  FACTUAL BACKROUND

Plaintiff's claims in this action arise from alleged incidents that occurred between June 10

and August 2, 2019, while he was incarcerated in the Miller County Detention Center ("MCDC").

Plaintiff is currently incarcerated in the Texas Department of Criminal Justice - Byrd Unit in

Huntsville, Texas.  Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was incarcerated in the MCDC for several months in 2018.  The exact time

Plaintiff was detained in 2018 is not clear from the record.  However, Plaintiff submitted several

medical requests and grievances to MCDC officers and medical personnel, including Defendants

Foster, King and Adams, between April and November of 2018 regarding his dental problems.

The Court finds these requests are relevant to the instant lawsuit and Defendants' summary judgment motion.

On April 15, 2018, Plaintiff submitted a medical request (kiosk #2,777,931) stating:

I have a metal bar in my jaw that originally had 4 screws holding it in place, 2 screws have came out through my cheek and the bar has pushed through my gums and is exposed on the inside of my mouth. Also I have been inquiring about my psych meds. Chelsea sent for my medical records from metrocare and geen oaks in dallas tx but I haven't heard anything back. I am on Zoloft and serequil. My diagnosis is bi polar 1 and depression.

Defendant King responded the following day stating, "You've been placed on the list to speak with the mental health nurse. (ECF No. 23, p. 18).

On April 16, 2018, Plaintiff submitted a grievance (kiosk #2,782, 255) stating, "I wrote a medical request about a metal plate in my jaw that screws have came out and the bar has pushed through my gums and is exposed in my mouth and instead of addressing this issue I was instead referred to the mental health nurse." (ECF No. 23, p. 13).

On April 24, 2018, Plaintiff submitted a medical request (kiosk #2,813,201) stating:

I am experiencing sharp pains due to a metal bar in my jaw. 2 screws have come out and the bar has come through mythe inside of my mouth and is exposed and my gum is swollen where it is open and the bar has pushed through. 1 of the screws was drilled through a nerve cavity so there is nerve damage and sharp pains.

(ECF No. 23, p. 14). Defendant King responded the following day stating, "You've been placed on the list to see the dentist during his next visit." *Id.*

On April 28, 2018, Plaintiff was seen by a dentist with Dentrust Optimized Care Solutions. (ECF No. 23, p. 23). In the progress notes the dentist noted, "refer to oral surgeon for treatment." *Id.*

On October 16, 2018, Plaintiff submitted a medical request (kiosk #3,505,667) stating, "I severely need to see the dentist about surgery." (ECF No. 23, p. 12). Defendant King responded stating, "You've been placed on the list to see the dentist during his next visit." *Id.*

On November 4, 2018, Plaintiff submitted a medical request (kiosk #3,582,060) stating:

I have am aware that I am on the dental list but that has been weeks ago I feel like the pain and the fact that the metal bar has shifted up into my gum line riding beside the roots of my teeth requires immediate attention and it has become more painful and even more painful to eat it contantly bleeds as it continues to push through my jaw and it is exposed and can become fatal if it get infected. I feel I need and am requesting to go to the emergency room to get this examined and fixed.

That same day Defendant Adams responded indicating, "seen at sick call on 11-4-18". (ECF No. 23, p. 11).

On November 6, 2018, Plaintiff submitted a grievance (kiosk #3,589,638) stating:

I CAN BARELY MOVE MY JAW BECAUSE OF AN OFFICER USING IMPROPER USE OF FORCE AND GRABBED MY JAW AND DISLODGED MY METAL PLATE IN MY JAW. I HAVE REQUESTED TO GET EMERBENCY ATTENTION FROM MEDICAL AND EXPLAINED THAT THAT IT CONTANTLY BLEEDS MY BONE AND PLATE IS EXPOSED IN MY MOUTH. I EXPERIENCE STINGING FROME THE OPEN WOUND AND SHARP ACHING PAINS FROM THE SHIFTING OF THE METAL MOVING AROUND IN MY JAWLINE. ITS VERY SENSITIVE TO TO TOUCH AND A TASK TO EAT. I NEED MEDICAL ATTENTION IMMEDIATELY.

(ECF No. 23, p. 9). Defendant King responded on November 12, 2018, indicating "Seen at sick call on 11-4-18". *Id.*

At some point after November 6, 2018, Plaintiff was released from the MCDC without being evaluated by an oral surgeon. (ECF No. 21-4).

On June 10, 2019, Plaintiff was again booked into the MCDC. (ECF No. 21-2, p. 1). That same day, Plaintiff underwent a history and physical by Defendant Adams. (ECF No. 21-2, pp. 5-7). Defendant Adams noted, "Patient reports dental pain, bottom right back tooth is broken in half

and gums are red with inflammation. New orders for Amoxil 1000mg PO BID X 10 days, and Ibuprofen 800mg PO BID X 10 days. Patient reports that he takes more medication than provided by [Texas Uniform Health Status Update] TUHSU. ROI sent off to obtain medication records at this time." *Id.* at p. 7.

On June 10, 2019, the jail nurse practitioner[1] wrote an order to start Plaintiff on Amoxil 1000 mg twice a day for ten days and Ibuprofen 800 mg twice a day for ten days. (ECF No. 21-2, pp.  The jail nurse practitioner also ordered Plaintiff be continued on medication verified through the TUHSU, which consisted of Symtuz 800 – 150 mg daily.  Amoxil is an antibiotic which may be used to treat dental infections.  Symtuza is a prescription medicine approved by the U.S. Food and Drug Administration for the treatment of HIV infection.  (ECF No. 20, p. 1).

On June 11, 2019, Plaintiff was started on the Symtuza and Ibuprofen.  Plaintiff began receiving Amoxil on June 12, 2019.  (ECF No. 21, p. 1).

On June 23, 2019, Plaintiff submitted a medical request (kiosk # 4,570,797) stating: "i am requesting to be put on some pain pills i have an infected tooth and it hruts so bad i cant even bite down can I be put on the dentist list." (ECF No. 21-2, p. 18).  In response, Defendant Adams informed Plaintiff he was on the list to see the dentist, he could purchase Tylenol or Ibuprofen in the commissary, and he had already been given a round of antibiotics for his infected tooth.  *Id.*

On June 24, 2019, Plaintiff submitted a medical request (kiosk # 4,576,189) stating:

ATTN:NURSE KING I PUT IN A MEDICAL REQUEST TO GET SOMETHING FOR PAIN I HAVE AN INFECTED TOOTH IT HURTS TO TOUCH OR EVEN CHEW YET WHEN I RAN OUT OF IBUEPROFEN I PUT IN A MEDICAL REQUEST ONLY TO BE TOLD I BEEN PUT ON A DENTIST LIST I AM IN CONSTANT ACHING PAIN TO THE POINT ITS IN MY TEMPLE AND THE WHOLE SIDE OF MY FACE HURTS AND I CANT GET ANYTHING FOR

---

[1] Defendants have not identified the name of the jail's nurse practitioner and the Court has not been able to determine the identity of the nurse practitioner from the record.

> PAIN EVEN THOUGH I PUT IN FOR A SICK CALL AND I WASNT EVEN
> SEEN I AM INDIGENT AND CANT BUY PAIN PILLS OFF COMMISSARY.

In response, medical personnel stated that "You were given ibuprofen for this." (ECF No. 25-1,

p. 23).

On June 24, 2019, Plaintiff submitted a second medical request (kiosk # 4,576,230)

stating:

> NURSE KING: I SPOKE TO U TODAY AND WAS TOLD BY U THAT I
> WOULD BE SEEN TODAY AND I WASNT IM HAVING DIZZY SPELLS AND
> FEELING NAUSIATED FROM THE CONSTANT PAIN FROM AN INFECTED
> TOOTH AND I REPORTED THIS WHEN I FIRST CAME IN AND SO WHY
> WOULD I BE TAKEN OFF PAIN PILS BEFORE I SEE THE DENTIST. IF U
> FAX PARKLAND HOSPITAL U WILL SEE I WAS ON TYLENOL 3 AND
> IBUEPROFEN THATS HOW BAD THE PAIN IS AND I CANT RECEIVE
> ANYTHING FOR PAIN AT ALL. CAN I PLS BE SEEN BY THE DOCTOR.

(ECF No. 25-1, p. 24).  In response, medical personnel wrote: "DUPLICATE REQUEST."  *Id.*[2]

On July 1, 2019, at 9:57 p.m., Plaintiff submitted a request (kiosk # 4,617,104) in which

he stated:

> I HAVE BEEN TRYING TO SUBMIT A SICKCALL REQUEST DURING THE
> APPROPRIATE HOURS FOR TWO DAYS NOW BUT AM NOT ABLE TO
> GET ON THE KIOK BECAUSE IT IS TIED UP DURING THOSE HOURS. BUT
> I HAVE INFORMED THE NURSE KING AND CHELSEY ABOUT MY
> MEDICAL EMERGENCY. I HAVE AN OPEN WOUND IN MY MOUTH
> WHERE MY BONE IS EXPOSED AND AND A METAL BAR IS
> PROTRUDING THROUGH MY GUM LINE AND IS CONSTANTLY
> BLEEDING I CAN GET SICK AND EVEN DIE FROM THIS CONDITION
> AND I CONTINUE TO INFORM STAFF AND MEDICAL STAFF THIS IS A
> MED EMER.

---

[2]It is not clear which of the medical staff responded to the two requests submitted on June 24, 2019.  The Court also notes Defendants did not provide the Court with these medical requests.  Instead, the requests were submitted to the Court as an exhibit to the Miller County Defendants' summary judgment materials.

(ECF No. 25-1, p. 26).  In response, Plaintiff was instructed to submit a sick call request to the medical department through the kiosk.  *Id.*

On July 2, 2019 at 11:53 a.m., Plaintiff submitted a medical request (kiosk # 4,619,388) stating, "I HAVE AN OPEN WOUND IN MY MOUTH THAT EXPOSES MY BONE AND I NEED TO SEE THE DOCTOR AND BE PLACED ON PAIN AND ANTIBIOTICS PLS THIS IS A MEDICAL EMERGENCY." (ECF No. 25-1, p. 27).  Medical personnel received the request at 3:09 p.m. and at 9:32 p.m. responded stating, "Seen by nurse. Nurse Chelsey." *Id.*  Defendant Foster's notes indicated Plaintiff had the dental condition for more than six months, Plaintiff had seen the jail dentist during his previous incarceration in the MCDC, and he had received a referral to an oral surgeon but "left before he could go to appt.". (ECF No. 21-2, pp. 21-22).  Plaintiff was then placed on Tylenol 1000 mg twice a day for seven days.  *Id.*

On July 5, 2019, Plaintiff was seen by the jail nurse practitioner, and was placed on Pen Vee K.  Pen Vee K is an antibiotic, which may be used to treat gum and mouth infections.  (ECF No. 21-2, p. 8).  The nurse practitioner also ordered a panorex imaging study.  A panorex is an x-ray that provides a full view of the upper and lower jaws, teeth, temporomandibular joints (TMJs) and sinuses.  Plaintiff was also ordered Ibuprofen 800 mg to be administered "as needed".  The nurse practitioner noted Plaintiff had been experiencing left jaw pain for "several years".  (ECF No. 21-2, p. 24).

On July 10, 2019 Plaintiff underwent the imaging studies, which showed a mandibular metal plate that was being held in place by only the tips of the hardware screws.  (ECF No. 21-2, p. 25).

On July 13, 2019, Plaintiff submitted a (non-medical) request (kiosk # 4,678,317) in which he stated:

> I HAVE PUT IN MEDICAL SICKCALLS ABOUT THE BONE BEING EXPOSED IN MY MOUTH THE CONSTANT BLEEDING AND THE STING AND ALSO THE NUMB SENSATION FROM MY LIP DOWN TO MY CHIN I CAN SEE MY JAW BONE IN THE MIRROR. I HAVE BROUGHT THIS UP IN 7 REQUESTS AS A MEDICAL EMERGENCY TO NO AVAIL. I HAVE ALSO INFORMED SEVERAL OFFICERS A THEY HAVE CAME IN THE POD CPL SMITH, OFF.TATUM, NUR CHELSEY, NUR KING, NUR CATHERINE TO NAME A FEW. I ALSO HAVE AN INFECTED TO ON THE OPPOSITE SIDE AND WAS SKIPPED WHEN THE DENTIST CAME.

(ECF No. 25-1, p. 33). A grievance officer forwarded the request to medical personnel, and Defendant King responded, noting Plaintiff had been placed on the list to see the dentist during the dentist's next visit. *Id.*

On July 16, 2019, Plaintiff submitted a medical request (kiosk # 4,688,641) in which he stated: "I NEED SOME MORE PAIN PILLS FOR MY JAW THE BONE IS EXPOSED AND IT BLEEDS AND ACHES AND STINGS AND I NEED PAIN RELIEF UNTIL IT IS TAKEN CARE OF." (ECF No. 21-2, p. 26). Medical staff responded the same day: "Doctor has prescribed Naproxen 500mg twice a day to help with the pain. Please be at both morning and evening pill pass." *Id.*

That same day, Plaintiff submitted a non-medical request (kiosk # 4,688,886) in which he again complained about pain due to his jawbone being exposed. (ECF No. 25-1, p. 35). The complaint was forwarded to medical staff and Defendant King responded two days later on July 18, 2019, "You have seen the doctor for this and are currently receiving medications to help." *Id.*

On July 27, 2019, Plaintiff submitted a medical request (kiosk # 4,744,037) in which he requested medicated mouthwash. (ECF No. 21-2, p. 30). Medical staff responded the same day: "Seen by nurse." *Id.*

Plaintiff was released from the custody of the MCDC on August 2, 2019. (ECF No. 21-1, p. 3).

According to the affidavit of Defendant King, "the jail dentist sees patients at the MCDC every two months. The jail dentist saw patients on June 8, 2019 – two days before Pritchett was booked in. The jail dentist next saw patients on August 3, 2019 – one day after Pritchett was released." (ECF No. 21-1, p. 3).

At all times relevant, Southern Health Partners, Inc. was under contract with the MCDC to provide healthcare services to inmates housed at the MCDC. (ECF No. 21-1, p. 1).

At all times relevant, Defendants Foster, King and Adams were employees of Southern Health Partners, Inc. (ECF No. 21-1, p. 3).

According to the affidavit of Defendant King, there is no policy or custom of Southern Health Partners, Inc. that prohibited or delayed treatment of or exhibited deliberate indifference to Plaintiff's medical conditions. (ECF. 21-1, p. 3).

## II.  PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on July 30, 2019 alleging Defendants King, Foster and Adams denied him medical care while he was incarcerated in the MCDC in June and July of 2019 when Defendants ignored his complaints of extreme pain from the "bone being exposed in my mouth" and "failed to address the medical emergency". (ECF No. 1, p. 7).[3]  Plaintiff states at the time he filed the Complaint he was in jail for an alleged probation violation. *Id.* at p. 4. Plaintiff is suing Defendants in their official and individual capacities and seeks compensatory damages. *Id.* at p. 8.

---

[3] Plaintiff also sued Sergeant Griffie, Corporal Smith, and Sergeant Rogers. Plaintiff's claims against these Defendants will be addressed in a separate Report and Recommendation.

On February 14, 2020, Defendant King, Foster and Adams filed a motion for summary judgment arguing they are entitled to summary judgment because: 1) they were not deliberately indifferent to Plaintiff's serious dental needs; 2) no policy of their employer – Southern Health Partners, Inc. - caused Plaintiff to suffer any unconstitutional harm; and 3) Plaintiff cannot "Meet Proof with Proof."  (ECF No. 31).

Plaintiff filed a Response to Defendants' motion stating in part, "…I had a medical emergency…metal plate protruding though my gumline…I was denied medical care and told that Miller County would not pay for the removal of the hardware exposed in my mouth which put me at risk…"  (ECF No. 23).   Although Plaintiff's Response is not verified, Plaintiff included copies of grievances and medical requests he submitted at the MCDC which were responded to by Defendants.  Therefore, these grievances will be considered by the Court as part of the summary judgment record.  In addition, the Court must consider the facts set forth in Plaintiff's verified Complaint in ruling on the motion for summary judgment.[4]

## III.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

---

[4] A verified complaint is the equivalent of an affidavit for summary judgment purposes.  *See Roberson v. Hayti Police Dept't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

### A. Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Here, Defendants do not dispute Plaintiff's dental issues are serious medical conditions. The question now before the Court is whether Defendants' actions, or lack thereof, rose to the level of a constitutional violation.

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239. Indeed, "delays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim". *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009).

Here, the summary judgment record establishes Plaintiff submitted multiple medical requests asking to be seen by a dentist and describing the extreme pain he was suffering from the deteriorating metal and screws in his mouth to Defendants Foster, King, and Adams between April and November of 2018 and again in June and July of 2019. In addition, the record is clear while

Plaintiff was incarcerated in the MCDC he was evaluated by a dentist on April 28, 2018, who gave specific instructions to refer Plaintiff to an oral surgeon for evaluation and treatment. It is also clear, at least for several days in 2019, Plaintiff was not provided with pain medication he had previously been prescribed for his dental condition, he was never seen by a dentist, nor was he sent to an oral surgeon for evaluation even though a dentist had ordered the referral.

As previously stated, deliberate indifference may be demonstrated by prison officials [or medical personell] who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 105. Moreover, when an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow. *See Foulks v. Cole Cnty. Mo.*, 991 F.2d 454 (8th Cir. 1993) (liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain). Accordingly, the Court finds there are genuine issues of disputed fact as to whether Defendants King, Foster and Adams were deliberately indifferent to Plaintiff's serious dental needs in June and July of 2018. Therefore, I recommend Defendants' motion for summary judgment be denied on Plaintiff's claims relating to denial of medical care.

### B. Official Capacity Claims

Plaintiff also sues Defendants in their official capacity. When a government contracts with a third-party to fulfill a constitutional duty – such as providing medical care - official-capacity claims against the third-party's employees are treated as claims against the third-party itself. *See Cannady v. Cradduck*, 2016 WL 4432704, at *1-*2 (W.D. Ark. Aug. 18, 2016) (finding that official-capacity claims against employees of a third party medical provider are treated as claims against the company because Benton County contracted with the company to provide healthcare to County prisoners"). Thus, Plaintiff's official capacity claims against Defendants King, Foster

and Adams are claims against their employer Southern Health Partners, Inc. To sustain an official-capacity claim against such an entity a plaintiff "must show that there was a policy custom, or official action [of Southern Health Partners, Inc.] that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (involving a § 1983 claim against a prison medical provider).

Here, Plaintiff has failed to produce evidence of any policy or custom of Southern Health Partners, Inc. that contributed to the alleged violation of Plaintiff's constitutional rights. Accordingly, I recommend Defendants' summary judgment motion be granted as to Plaintiff's official capacity claims against Defendants King, Foster, and Adams.

## V. CONCLUSION

For the reasons stated above, I recommend Defendants King, Foster, and Adams' Motion for Summary Judgment (ECF No. 19) be **GRANTED in part and DENIED in part.**

I recommend the motion be **GRANTED** as to Plaintiff's official capacity claims and these claims be **DISMISSED WITH PREJUDICE.**

I recommend the motion be **DENIED** as to Plaintiff's individual capacity claims against Defendants King, Foster, and Adams regarding denial of medical care.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 16th day of April 2020.**

13

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE