IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TONY WAYNE PRITCHETT                                                    PLAINTIFF

v.                                    Civil No. 4:19-cv-04084

SERGEANT B. GRIFFIE, Miller County
Detention Center ("MCDC"); CORPORAL
B. SMITH, MCDC; SERGEANT D. ROGERS,
MCDC; NURSE S. KING, MCDC; NURSE
CHELSEY, MCDC; and NURSE CATHERINE, MCDC                    DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Tony Wayne Pritchett, under 42 U.S.C.

§ 1983.   Before the Court is a Motion for Summary Judgment filed by Defendants Sergeant B.

Griffie, Corporal B. Smith, and Sergeant D. Rogers.  (ECF No. 24).  Plaintiff filed a Response and

Statement of Disputed Facts (ECF Nos. 36, 37) and Defendants filed a Reply.  (ECF No. 38).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey,

Chief United States District Judge, referred this case to the undersigned for the purpose of making

a Report and Recommendation.

### I.  FACTUAL BACKROUND

Plaintiff's claims in this action arise from alleged incidents that occurred between June 10

and August 2, 2019, while he was incarcerated in the Miller County Detention Center ("MCDC").

Plaintiff is currently incarcerated in the Texas Department of Criminal Justice - Byrd Unit in

Huntsville, Texas.  Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was incarcerated in the MCDC for several months in 2018.  The exact time

Plaintiff was detained in 2018 is not clear from the record.  However, Plaintiff submitted several

medical requests and grievances to MCDC officers and medical personnel, including Defendants

1

Foster, King and Adams, between April and November of 2018 regarding his dental problems.  It is not clear from the record if Defendants Griffie, Smith or Rogers were involved in responding to any of Plaintiff's grievances or requests in 2018 because the documents only reference notes by "ADMIN G. OFFICER".  (ECF No. 37, pp. 10, 14).  Even so, the Court finds these grievances and requests are relevant to the instant lawsuit and Defendants' summary judgment motion.

On April 15, 2018, Plaintiff submitted a medical request (kiosk #2,777,931) stating:

> I have a metal bar in my jaw that originally had 4 screws holding it in place, 2 screws have came out through my cheek and the bar has pushed through my gums and is exposed on the inside of my mouth. Also I have been inquiring about my psych meds. Chelsea sent for my medical records from metrocare and geen oaks in dallas tx but I haven't heard anything back. I am on Zoloft and serequil. My diagnosis is bi polar 1 and depression.

Defendant King responded the following day stating, "You've been placed on the list to speak with the mental health nurse.  (ECF No. 23, p. 18).

On April 16, 2018, Plaintiff submitted a grievance (kiosk #2,782, 255) stating, "I wrote a medical request about a metal plate in my jaw that screws have came out and the bar has pushed through my gums and is exposed in my mouth and instead of addressing this issue I was instead referred to the mental health nurse."  (ECF No. 37, p. 10).  "ADMIN G. OFFICER" responded stating, "I have forwarded you request to the appropriate authority.  *Id.*  Defendant King then responded to Plaintiff stating, "You were informed we are unable to address multiple issues on one sick call request.  Please separate your complaints into one per request."  *Id.*

On April 24, 2018, Plaintiff submitted a medical request (kiosk #2,813,201) stating:

> I am experiencing sharp pains due to a metal bar in my jaw. 2 screws have come out and the bar has come through mythe inside of my mouth and is exposed and my gum is swollen where it is open and the bar has pushed through. 1 of the screws was drilled through a nerve cavity so there is nerve damage and sharp pains.

(ECF No. 37, p. 11).  Defendant King responded the following day stating, "You've been placed on the list to see the dentist during his next visit."  *Id.*

On April 28, 2018, Plaintiff was seen by a dentist with Dentrust Optimized Care Solutions. (ECF No. 23, p. 23).  In the progress notes the dentist noted, "refer to oral surgeon for treatment." *Id.*

On October 16, 2018, Plaintiff submitted a medical request (kiosk #3,505,667) stating, "I severely need to see the dentist about surgery."  (ECF No. 37, p. 12).  Defendant King responded stating, "You've been placed on the list to see the dentist during his next visit."  *Id.*

On November 4, 2018, Plaintiff submitted a medical request (kiosk #3,582,060) stating:

> I have am aware that I am on the dental list but that has been weeks ago I feel like the pain and the fact that the metal bar has shifted up into my gum line riding beside the roots of my teeth requires immediate attention and it has become more painful and even more painful to eat it contantly bleeds as it continues to push through my jaw and it is exposed and can become fatal if it get infected. I feel I need and am requesting to go to the emergency room to get this examined and fixed.

That same day Defendant Adams responded indicating, "seen at sick call on 11-4-18".  (ECF No. 37, p. 13).

On November 6, 2018, Plaintiff submitted a grievance (kiosk #3,589,638) stating:

> I CAN BARELY MOVE MY JAW BECAUSE OF AN OFFICER USING IMPROPER USE OF FORCE AND GRABBED MY JAW AND DISLODGED MY METAL PLATE IN MY JAW. I HAVE REQUESTED TO GET EMERGENCY ATTENTION FROM MEDICAL AND EXPLAINED THAT THAT IT CONTANTLY BLEEDS MY BONE AND PLATE IS EXPOSED IN MY MOUTH. I EXPERIENCE STINGING FROME THE OPEN WOUND AND SHARP ACHING PAINS FROM THE SHIFTING OF THE METAL MOVING AROUND IN MY JAWLINE. ITS VERY SENSITIVE TO TO TOUCH AND A TASK TO EAT. I NEED MEDICAL ATTENTION IMMEDIATELY.

(ECF No. 37, p. 14). "ADMIN G. OFFICER" responded stating, "I have forwarded you request to the appropriate authority. *Id.* Defendant King responded to Plaintiff on November 12, 2018, indicating "Seen at sick call on 11-4-18". *Id.*

At some point after November 6, 2018, Plaintiff was released from the MCDC without being evaluated by an oral surgeon. (ECF No. 21-4).

On June 10, 2019, Plaintiff was again booked into the MCDC. (ECF No. 25-1, p. 4). Plaintiff completed an Officer Screening and Intake Questionnaire at the time of booking supervised by Defendant Smith. (ECF No. 25-1, p. 9). Plaintiff indicated on the form he had serious medical conditions including "HIVT, Asthma" and noted he was taking the following medications which needed to be continued during his incarceration in the MCDC: "symtuza, gabapintin, zylrea, Seroquel, Zoloft, albuterol." *Id.* Plaintiff also signed a "Patient's Consent for Treatment" which was signed and witnessed by both Plaintiff and Defendant Smith. *Id.* at p. 10.

That same day, Plaintiff underwent a history and physical by Defendant Adams. (ECF No. 21-2, pp. 5- 7). Defendant Adams noted, "Patient reports dental pain, bottom right back tooth is broken in half and gums are red with inflammation. New orders for Amoxil 1000mg PO BID X 10 days, and Ibuprofen 800mg PO BID X 10 days. Patient reports that he takes more medication than provided by [Texas Uniform Health Status Update] TUHSU. ROI sent off to obtain medication records at this time." *Id.* at p. 7.

On June 10, 2019, the jail nurse practitioner[1] wrote an order to start Plaintiff on Amoxil 1000 mg twice a day for ten days and Ibuprofen 800 mg twice a day for ten days. (ECF No. 21-2, pp. The jail nurse practitioner also ordered Plaintiff be continued on medication verified through

---

[1] Defendants have not identified the name of the jail's nurse practitioner and the Court has not been able to determine the identity of the nurse practitioner from the record.

the TUHSU, which consisted of Symtuza 800 – 150 mg daily.  Amoxil is an antibiotic which may

be used to treat dental infections.  Symtuza is a prescription medicine approved by the U.S. Food

and Drug Administration for the treatment of HIV infection.  (ECF No. 20, p. 1).

On June 11, 2019, Plaintiff was started on the Symtuza and Ibuprofen.  Plaintiff began

receiving Amoxil on June 12, 2019.  (ECF No. 21, p. 1).

On June 23, 2019, Plaintiff submitted a medical request (kiosk # 4,570,797) stating: "i am

requesting to be put on some pain pills i have an infected tooth and it hruts so bad i cant even bite

down can I be put on the dentist list." (ECF No. 25-1, p. 21).  In response, Defendant Adams

informed Plaintiff he was on the list to see the dentist, he could purchase Tylenol or Ibuprofen in

the commissary, and he had already been given a round of antibiotics for his infected tooth.  *Id*.

On June 24, 2019, Plaintiff submitted a medical request (kiosk # 4,576,189) stating:

> ATTN:NURSE KING I PUT IN A MEDICAL REQUEST TO GET SOMETHING
> FOR PAIN I HAVE AN INFECTED TOOTH IT HURTS TO TOUCH OR EVEN
> CHEW YET WHEN I RAN OUT OF IBUEPROFEN I PUT IN A MEDICAL
> REQUEST ONLY TO BE TOLD I BEEN PUT ON A DENTIST LIST I AM IN
> CONSTANT ACHING PAIN TO THE POINT ITS IN MY TEMPLE AND THE
> WHOLE SIDE OF MY FACE HURTS AND I CANT GET ANYTHING FOR
> PAIN EVEN THOUGH I PUT IN FOR A SICK CALL AND I WASNT EVEN
> SEEN I AM INDIGENT AND CANT BUY PAIN PILLS OFF COMMISSARY.

In response, medical personnel stated that "You were given ibuprofen for this." (ECF No. 25-1,

p. 23).

On June 24, 2019, Plaintiff submitted a second medical request (kiosk # 4,576,230) stating:

> NURSE KING: I SPOKE TO U TODAY AND WAS TOLD BY U THAT I
> WOULD BE SEEN TODAY AND I WASNT IM HAVING DIZZY SPELLS AND
> FEELING NAUSIATED FROM THE CONSTANT PAIN FROM AN INFECTED
> TOOTH AND I REPORTED THIS WHEN I FIRST CAME IN AND SO WHY
> WOULD I BE TAKEN OFF PAIN PILS BEFORE I SEE THE DENTIST. IF U
> FAX PARKLAND HOSPITAL U WILL SEE I WAS ON TYLENOL 3 AND
> IBUEPROFEN THATS HOW BAD THE PAIN IS AND I CANT RECEIVE
> ANYTHING FOR PAIN AT ALL. CAN I PLS BE SEEN BY THE DOCTOR.

(ECF No. 25-1, p. 24).  In response, medical personnel wrote: "DUPLICATE REQUEST."  *Id.*

On July 1, 2019, Plaintiff told Defendant Smith he was in pain and needed to see medical. (ECF No. 25-3, p. 1).  Defendant Smith states he did not believe Plaintiff was suffering from a medical emergency requiring immediate medical attention.  *Id.*  Defendant Smith then informed Plaintiff he needed to submit a medical request through the kiosk, and he could do so any day between the hours of 8:00 a.m. and 12:00p.m.  *Id.; see also* (ECF No. 1, p. 6).

On July 1, 2019, at 9:57 p.m., Plaintiff submitted a request (kiosk # 4,617,104) in which he stated:

> I HAVE BEEN TRYING TO SUBMIT A SICKCALL REQUEST DURING THE APPROPRIATE HOURS FOR TWO DAYS NOW BUT AM NOT ABLE TO GET ON THE KIOSK BECAUSE IT IS TIED UP DURING THOSE HOURS. BUT I HAVE INFORMED THE NURSE KING AND CHELSEY ABOUT MY MEDICAL EMERGENCY. I HAVE AN OPEN WOUND IN MY MOUTH WHERE MY BONE IS EXPOSED AND AND A METAL BAR IS PROTRUDING THROUGH MY GUM LINE AND IS CONSTANTLY BLEEDING I CAN GET SICK AND EVEN DIE FROM THIS CONDITION AND I CONTINUE TO INFORM STAFF AND MEDICAL STAFF THIS IS A MED EMER.

(ECF No. 25-1, p. 26).  Defendant Rogers responded at 10:41 p.m. stating:

> Please submit a sickcall request to the medical department through the kiosk. Kiosk messages to jail staff are not sick calls. Per Miller County Detention Center policy, sickcalls can be submitted 7 days a week from 0800-1200 in order to be seen that same evening. Please notify correctional staff of any emergency for immediate medical assistance.

*Id.*  In his affidavit, Defendant Rogers states he did not believe Plaintiff was suffering from a medical emergency requiring immediate medical attention – "but if he was, …Mr Pritchett should have received medical attention when he informed the nurses as he stated that he already had when

he submitted the kiosk request". (ECF No. 25-4, p. 1). Plaintiff appealed Defendant Rogers'
response on July 2, 2019, stating:

> THIS IS A MEDICAL EMERGENCY AND I HAVE SUBMITTED SICKCALLS
> AND BROUGHT IT TO MEDICAL STAFF'S ATTENTION MY LIP DOWN TO
> MY CHIN HAS GONE NUMB DUE TO THIS METAL BAR PROTRUDING
> THROUGH MY GUMLINE AND EXPOSING BARE BONE INSIDE MY
> MOUTH. AGAIN THIS IS A MEDICAL EMERGENCY.

(ECF No. 25-1, p. 26). Defendant Rogers responded eight hours later again instructing Plaintiff
to submit a "sickcall request to the medical department through the kiosk. Kiosk messages to jail
staff are not sickcalls…Please notify correctional staff of any emergency for immediate medical
assistance." *Id.*

On July 2, 2019 at 11:53 a.m., Plaintiff submitted a medical request (kiosk # 4,619,388)
stating, "I HAVE AN OPEN WOUND IN MY MOUTH THAT EXPOSES MY BONE AND I
NEED TO SEE THE DOCTOR AND BE PLACED ON PAIN AND ANTIBIOTICS PLS THIS
IS A MEDICAL EMERGENCY." (ECF No. 25-1, p. 27). Medical personnel received the request
at 3:09 p.m. and responded at 9:32 p.m. stating, "Seen by nurse. Nurse Chelsey." *Id.* Defendant
Foster's notes indicate Plaintiff had the dental condition for more than six months, Plaintiff had
seen the jail dentist during his previous incarceration in the MCDC, and he had received a referral
to an oral surgeon but "left before he could go to appt.". (ECF No. 21-2, pp. 21-22). Plaintiff was
then placed on Tylenol 1000 mg twice a day for seven days. *Id.*

On July 5, 2019, Plaintiff was seen by the jail nurse practitioner, and was placed on Pen
Vee K. Pen Vee K is an antibiotic, which may be used to treat gum and mouth infections. (ECF
No. 21-2, p. 8). The nurse practitioner also ordered a panorex imaging study. A panorex is an x-
ray that provides a full view of the upper and lower jaws, teeth, temporomandibular joints (TMJs)

and sinuses.  Plaintiff was also ordered Ibuprofen 800 mg to be administered "as needed".  The nurse practitioner noted Plaintiff had been experiencing left jaw pain for "several years".  (ECF No. 21-2, p. 24).

On July 10, 2019 Plaintiff underwent the imaging study, which showed a mandibular metal plate that was being held in place by only the tips of the hardware screws.  (ECF No. 21-2, p. 25).

On July 13, 2019, Plaintiff submitted a request (kiosk # 4,678,317) in which he stated:

> I HAVE PUT IN MEDICAL SICKCALLS ABOUT THE BONE BEING EXPOSED IN MY MOUTH THE CONSTANT BLEEDING AND THE STING AND ALSO THE NUMB SENSATION FROM MY LIP DOWN TO MY CHIN I CAN SEE MY JAW BONE IN THE MIRROR. I HAVE BROUGHT THIS UP IN 7 REQUESTS AS A MEDICAL EMERGENCY TO NO AVAIL. I HAVE ALSO INFORMED SEVERAL OFFICERS A THEY HAVE CAME IN THE POD CPL SMITH, OFF.TATUM, NUR CHELSEY, NUR KING, NUR CATHERINE TO NAME A FEW. I ALSO HAVE AN INFECTED TO ON THE OPPOSITE SIDE AND WAS SKIPPED WHEN THE DENTIST CAME.

(ECF No. 25-1, p. 33).  "ADMIN G. OFFICER", forwarded the request to medical personnel, and Defendant King responded, noting Plaintiff had been placed on the list to see the dentist during the dentist's next visit.  *Id.*

On July 16, 2019, Plaintiff submitted a medical request (kiosk # 4,688,641) in which he stated: "I NEED SOME MORE PAIN PILLS FOR MY JAW THE BONE IS EXPOSED AND IT BLEEDS AND ACHES AND STINGS AND I NEED PAIN RELIEF UNTIL IT IS TAKEN CARE OF." (ECF No. 25-1, p. 34). Medical staff responded the same day: "Doctor has prescribed Naproxen 500mg twice a day to help with the pain. Please be at both morning and evening pill pass." *Id.*

That same day, Plaintiff submitted a request (kiosk # 4,688,886) in which he again complained:

> I HAVE REPORTED MY JAW BONE BEING EXPOSED IN MY MOUTH, THE PAIN, AND BLEEDING, AND THE DISCOMFORT SEVERAL TIMES TO OFFICERS, MEDICAL STAFF AND ON SICKCALLS. THE PAIN IS BECOMING UNBEARABLE AND THIS IS A MEDICAL EMERGENCY AS IT AN OPEN WOUND AND CAN GET INFECTED AND BE FATAL.

(ECF No. 25-1, p. 35). No MCDC officer responded to Plaintiff's request but someone forwarded the request to medical staff. Two days later Defendant King responded on July 18, 2019, "You have seen the doctor for this and are currently receiving medications to help." *Id.*

On July 27, 2019, Plaintiff submitted a medical request (kiosk # 4,744,037) in which he requested medicated mouthwash. (ECF No. 25-1, p. 39). Medical staff responded the same day: "Seen by nurse." *Id.*

On August 2, 2019, Plaintiff was released from the custody of the MCDC. (ECF No. 21-1, p. 3).

According to the affidavit of Defendant King, "the jail dentist sees patients at the MCDC every two months. The jail dentist saw patients on June 8, 2019 – two days before Pritchett was booked in. The jail dentist next saw patients on August 3, 2019 – one day after Pritchett was released." (ECF No. 21-1, p. 3).

At all times relevant, Southern Health Partners, Inc. was under contract with the MCDC to provide healthcare services to inmates housed at the MCDC and Defendants Foster, King and Adams were employees of Southern Health Partners, Inc. (ECF No. 21-1, pp. 1, 3).

At all times relevant, Defendants Griffie, Smith and Rogers were employed by Miller County and worked as officers in the MCDC. (ECF Nos. 25-2, 25-3, 25-4).

## II.  MCDC'S POLICIES AND PROCEDURES

The Miller County Sheriff's Office, Detention Division, has Standard Operating Procedures for medical services provided to inmates incarcerated in the MCDC. (ECF No. 25-1, pp. 48-53).   These policies and procedures were in effect during 2019 when Plaintiff was incarcerated.  The relevant provisions are set forth below:

Medical Services SOP 12.01

A.  PURPOSE: The purpose of this procedure is to establish guidelines for the provisions of regular and emergency medical care and services to inmates at the Miller County Jail.

B.  SCOPE:  This procedure shall apply to all Corrections Personnel and health care providers at the jail.

C.  POLICY:  It is the policy of the Miller County Jail to maintain the health of each inmate at the level of his/her status at the time of incarceration, unless any illness or injury requires immediate attention or is deemed to be life threatening or potentially life threatening.

D.  DEFINITIONS: N/A

E.  PROCEDURE:

1.  MEDICAL CARE AND SERVICES

a.  The Miller County Jail provides regular and emergency medical care and services within the facility at a designated location.  The jail maintains written agreements with one or more health authorities licensed in the State of Arkansas for this purpose.

b.  The Jail's Medical Operating Procedures shall be standardized, reviewed at least annually by the health authority and covers at a minimum:
1)  Medical screening;
2)  Health appraisal;
3)  Physical examinations;
4)  Necessary medical, mental and dental services;
5)  Emergency medical and dental services;
6)  Suicide prevention services
7)  Notification of the next of kin in case of life threatening illness, injury or death…..

10

8) Prenatal care;
9) Delousing procedures approved by the health authority;
10) Infection Control and epidemic/disease containment;
11) Control of pharmaceuticals in compliance with the Arkansas State Board of Pharmacy;
12) Procedures for facility physician to review health appraisals and identify problems…

c. A list of names, phone numbers and on-call days of emergency health care providers shall be readily available in a designated location within the Jail Medical Department.

d. The facility medical staff's current licenses shall be kept in a centralized location in the Medical Department.

e. The Jail's Medical Department is self-operating 18 hours daily.

f. The facility maintains a written agreement for a licensed dentist to provide regular dental services as deemed necessary, including emergency care.

g. The facility will, when requested by the inmate, supply replacement of hearing aid batteries, send hearing aids to a repair company as soon as possible, and inform the inmate when it was sent…

2. MEDICAL SCREENING…

3. HEALTH APPRAISAL…

4. JAIL CONDITIONS

a. All jail personnel shall comply with the established sick call procedures for access to the medical staff for non-emergency medical complaints. The Medical Department shall conduct daily sick call for non-emergency medical complaints. ***The pod officer shall notify the appropriate personnel if a medical emergency exists in his/her area*** [emphasis added]…

5. SICK CALL

a. Inmates have the opportunity daily to request health care services by submitting sick call requests, regardless of housing assignments. Inmate sick call requests are collected daily by the medical supervisor through the medical selection on the KIOSKS and triaged during the evening medication rounds by qualified medical personnel for immediacy of need.

b. Verbal or written sick call requests for non-emergency illnesses/injuries shall

11

be triaged within 24 hours (72 hours during weekends) by qualified medical personnel. Based on physician approved protocols, inmates, when appropriate, shall be scheduled for the next sick call clinic or the next available provider's clinic. The frequency and duration of sick call shall be sufficient to meet the health needs of the inmate population.

**c. In the event a Pod Officer either finds or is given a sick call request, the Pod Officer shall quickly review the request for key words, e.g., chest pains, heart attack, shortness of breath, suicide ideations, etc., to determine the sense of urgency. If any of the above is noted, the Pod Officer shall contact medical immediately and check on the welfare of the inmate. All of the aforementioned sick call request forms shall be hand delivered to medical by a Sergeant or Corporal in a timely manner.** [emphasis in original] Officers *are precluded from randomly or indiscriminately reviewing sick call requests. Exigent or extenuating circumstances involving sick call requests, which are brought to the attention of an officer, shall be evaluated appropriately. Prompt medical attention shall be obtained when necessary*. [emphasis added]…

*Id.*

### III.  PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on July 30, 2019, alleging Defendants King, Foster, Adams, Griffie, Smith and Rogers denied him medical care while he was incarcerated in the MCDC in June and July of 2019 when Defendants ignored his complaints of extreme pain from the "bone being exposed in my mouth" and "failed to address the medical emergency". (ECF No. 1, p. 7).[2]

Plaintiff describes his individual capacity claim against Defendant Griffie as follows:

[on 6/30/2019] I informed Sgt. B. Griffie of my medical emergency via kiosk ref.#4,608,189. Stating my jaw bone is exposed in my mouth due to a metal bar protruding through my gums and a hole is present and my bone can be seen. I described the pain, the bleeding and a numbing sensation, was told to fill out a sick call which I had already done. I was in extreme pain and suffering and didn't receive medical care.

---

[2] On April 16, 2020, I entered a Report and Recommendation (ECF No. 30) recommending the dismissal of Plaintiff's official capacity claims against Defendants King, Foster and Adams and denying their Motion for Summary Judgment (ECF No. 19) as to the individual capacity claims against them for denial of medical care. On May 7, 2020, Judge Hickey adopted the Report and Recommendation *in toto*. (ECF No. 34).

(ECF No. 1, p. 5).  As for Defendants Smith and Rogers Plaintiff alleges on July 1, 2019:

> I informed B. Smith that my bone was exposed in my mouth and needed medical attention. I then wrote D. Rogers the Sgt. On duty of the same problem via kiosk ref.# 4,617,104 stating I had a medical emergency describing the pain, bleeding, and the bone exposed being an open wound. I was told to put in a sick call which I had already done.

*Id.* at p. 6.  Plaintiff describes his official capacity claims against all three Defendants as, "I was denied proper medical treatment, I informed [Griffie, Smith and Rogers] of an medical emergency and was not given any medical attention or treatment on a proper medical emergency."  *Id.* pp. 6-7.  At the time he filed his Complaint Plaintiff was in jail for an alleged probation violation.  (ECF No. 1, p. 4).  Plaintiff is seeking compensatory damages.  *Id.* at p. 8.  He also asks "for a policy to be in place properly enforced when a medical emergency is present not to be ignored or put off to medical who deny medical attention to an inmate stating the county won't pay for it."  *Id.*

On March 10, 2020, Defendant Griffie, Smith and Rogers filed a motion for summary judgment arguing they are entitled to summary judgment because: 1) Defendants did not deny or delay medical care to Plaintiff in violation of his constitutional rights; 2) Plaintiff's claims against Defendants in their individual capacities are barred by qualified immunity; and 3) there is no evidence any policy or custom of Miller County violated Plaintiff's constitutional rights.  (ECF No. 24).

On May 11, 2020, Plaintiff filed a Response and a Statement of Disputed Facts reasserting his claims against each of the Defendants for denial of medical care stating they were each aware of his serious medical needs and were deliberately indifferent to those needs.  (ECF Nos. 36, 37).  Although these pleadings are not verified, Plaintiff included copies of grievances and medical requests he submitted at the MCDC which were responded to by Defendants King, Foster, Adams and MCDC officers.  Therefore, these grievances will be considered by the Court as part of the

summary judgment record. In addition, the Court must consider the facts set forth in Plaintiff's verified Complaint in ruling on the motion for summary judgment.[3]

On May 12, 2020, Defendants filed a Reply arguing: 1) the Court's finding that there are disputed issues of material fact as to whether Defendants King, Foster and Adams were deliberately indifferent to Plaintiff's medical needs "cuts in the opposite direction regarding the same claims against the Miller County defendants"; 2) there is no evidence"…any Miller County Defendant interposed delay in Mr. Prichett's access to medical care, interfered with his access to medical care, or denied his access to medical care from medical personnel"; 3) the evidence shows Plaintiff's medical requests "were always routed directly to the SHP [Southern Health Partner] Defendants; 4) when Plaintiff "submitted a medical request as a grievance or in any form other than a written medical request as required by policy, he was always told to submit a written medical request in order to receive medical care from the SHP medical providers"; and 5) if there was any deficiency in the medical care provided to Plaintiff, "it was not due to deliberate indifference by the Miller County Defendants". *Id.* at p. 2.

## IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

---

[3] A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See Roberson v. Hayti Police Dept't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. DISCUSSION

### A. Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Here, Defendants do not dispute Plaintiff's dental issues are serious medical conditions. Indeed, Plaintiff was seen by a dentist in April of 2018 while he was incarcerated in the MCDC and was then referred to an oral surgeon to address his dental issues. Even without a referral from a dentist, which never took place, Plaintiff's description of his painful and dental issues demonstrates even a layperson would recognize the necessity for Plaintiff to be seen by a dentist or a doctor in 2019. *See Hartsfield v. Colburn*, 371 F.3d 454 (8th Cir. 2004) (finding it would have been obvious to a layperson that an inmate who suffered extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating was a serious medical condition in need of a doctor's attention); *Boyd v. Know*, 47 F.3d 966 (8th Cir. 1995) (serious medical need was obvious to a layperson from extent of swelling of impacted wisdom tooth). Accordingly, the only question before the Court is whether Defendants' actions, or lack thereof, rose to the level of a constitutional violation.

To establish the subjective prong of deliberate indifference, a plaintiff must show that a prison official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239. Even "delays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim". *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009). "Intentional delay in

16

providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention, or the action of the officers are so dangerous that a knowledge of the risk may be presumed. *McRaven v. Sanders,* 577 F.3d 974 (8th Cir. 2009).

Plaintiff specifically alleges in his verified Complaint he informed Defendants Griffie, Smith and Rogers about the extreme pain he was suffering from the broken metal in his mouth, the open wound exposing bone in his mouth, and an infected tooth. Defendants do not dispute they were informed and aware of Plaintiff's dental issues. (ECF No. 38, p. 4). Instead, Defendants argue they did not cause any delay in Plaintiff's dental treatment and were not deliberately indifferent to his needs because they either informed Plaintiff he needed to submit medical requests to the medical department to receive treatment or forwarded Plaintiff's requests to medical in accordance with the policy and procedures of the MCDC. The Court is not persuaded by these arguments.[4]

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). It follows that where the duty to furnish treatment is unfulfilled, contracting for services with an independent contractor, such as Southern Health Partners, Inc., does not immunize county officials from liability for damages in failing to provide a prisoner with the opportunity for such treatment. *See Langford*, 614 F.3d at 460. The Eighth Circuit has held prison officials personally liable for deliberate indifference where the officials knew an inmate's medical needs were not being meet yet remained indifferent. *Crooks v. Nix,* 872 F.2d 800, 804

---

[4] The situation in the instant case differs from the case relied on by Defendants. *Fourte v. Faulkner County, Ark.,* 746 F.3d 384 (8th Cir. 2014). There, the Eighth Circuit found no deliberate indifference because defendants did not have actual knowledge of his medical needs and the inmates' symptoms were not obvious signs of a serious medical condition).

17

(8th Cir. 1989).  When evaluating whether a prison employee deliberately disregarded a risk to a prisoner, a court considers the employee's actions in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action which would have been apparent to an employee in that position.  *Letterman v. Does,* 789 F.3d 856 (8th Cir. 2015).

Here, the summary judgment record establishes Plaintiff submitted three medical requests asking to be seen by a dentist describing the extreme pain he was suffering from the deteriorating metal and screws in his mouth to Defendants Foster, King, and Adams before he submitted requests to Defendants Griffie, Smith and Rogers.  Plaintiff submitted four requests to Defendants Griffie, Smith and Rogers pleading for help from the MCDC officers because his medical requests were not being adequately addressed by the medical staff.  In response, Defendants simply told Plaintiff to submit more sick calls.

Defendants also argue they did all they were required to do by the policy and procedures of the MCDC when they instructed Plaintiff to submit medical requests or when they forwarded his requests to medical because his requests did not contain certain key words (i.e. chest pains, heart attack, shortness of breath, suicide ideations, etc.) indicating an emergency situation. Section 5 – Sick Call paragraph c of the MCDC's policy and procedures states:

> **…In the event a Pod Officer either finds or is given a sick call request, the Pod Officer shall quickly review the request for key words, e.g., chest pains, heart attack, shortness of breath, suicide ideations, etc., to determine the sense of urgency.  If any of the above is noted, the Pod Officer shall contact medical immediately and check on the welfare of the inmate.  All of the aforementioned sick call request forms shall be hand delivered to medical by a Sergeant or Corporal in a timely manner.** [emphasis in original] ***Officers are precluded from randomly or indiscriminately reviewing sick call requests.  Exigent or extenuating circumstances involving sick call request, which are brought to the attention of an officer, shall be evaluated appropriately.  Prompt medical attention shall be obtained when necessary***. [emphasis added]…

18

*Id.*

The Court interprets this section as containing examples of key words (as opposed to an exclusive or exhaustive list) for the prison officers to use in determining the sense of urgency of an inmate's request or complaint. Plaintiff's requests submitted to Defendants clearly described excruciating pain and debilitating dental conditions including exposed bones, bleeding, and an infected tooth. In addition, the MCDC's policy prohibits its officers from "randomly or indiscriminately reviewing sick call requests" and envisions situations where "exigent or extenuating circumstances [may be] brought to the attention of the officers by an inmate which would require an officer to not only contact medical but also check on the welfare of an inmate.

There is no evidence any of the Defendants ever checked on Plaintiff's welfare despite his pleas for help in obtaining medical care. Instead, the summary judgment record establishes, at least for several days in 2019, Plaintiff was not provided with pain medication he had previously been prescribed for his dental condition, he was never seen by a dentist, nor was he sent to an oral surgeon for evaluation even though a dentist had ordered the referral back in 2018. Construing the facts in the light most favorable to Plaintiff, the Court finds there are disputed questions of material fact as to whether Defendants Griffie, Smith and Rogers were deliberately indifferent to Plaintiff's medical needs when they ignored Plaintiff's complaints and simply referred him back to medical personnel when Plaintiff had informed them he was receiving inadequate dental care.

**B. Qualified Immunity**

Having found sufficient evidence of deliberate indifference on the part of Defendants the Court will now address the issue of qualified immunity. Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). First, the court must determine whether the facts demonstrate a deprivation of a

constitutional right. *Id.* (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). If so, the court must decide whether the implicated right was clearly established at the time of the deprivation. *Id.* To determine if Plaintiff's right was clearly established at the time of the alleged deprivation, the Court "must . . . examine the information possessed by the governmental official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law." *Langford*, 614 F.3d at 461. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, the Court must ask whether the law at the time of the events in question gave the officers "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730 (2002).

Here, the facts when viewed in a light most favorable to Plaintiff demonstrate there are questions of material fact regarding whether Plaintiff's constitutional rights were violated when Defendants Griffie, Smith and Rogers ignored Plaintiff's complaints of severe pain and requests for medical help after he had submitted numerous requests to the medical staff which were either ignored or ineffectively addressed. Accordingly, the first prong of the qualified immunity analysis is satisfied. As to the second prong, there is no question in 2019 the law clearly established a reasonable officer would know it is unlawful to delay medical treatment for an inmate with obvious signs of medical distress, especially when the inmate communicates this distress directly to the officer. *See Dadd v. Anoka Cnty*, 827 F.3d 749, 753, 757 (8th Cir. 2016) (denying motion to dismiss based on qualified immunity, finding that jail staff acted with deliberate indifference to inmates complaints of pain); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (reversing grant of

summary judgment in favor of defendants on deliberate indifference claim where plaintiff suffered extreme dental pain, selling, and difficulty sleeping and eating); *Moore v. Jackson,* 123 F.3d 1082, 1085-89 (8th Cir. 1997) (holding a deliberate indifference claim survived summary judgment where defendants ignored intense and extreme dental pain).

Accordingly, I find Defendants Griffie, Smith and Rogers are not entitled to qualified immunity.  I recommend their summary judgment motion be denied on Plaintiff's individual capacity claims for denial of adequate medical care.

### C. Official Capacity Claims

Plaintiff also sues Defendants Griffie, Smith, and Rogers in their official capacities.  Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Miller County.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor."  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).  To establish liability on the part of Miller County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity."  *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Here, Plaintiff has not alleged any policy, practice, or custom of Miller County contributed to the alleged violation of Plaintiff's constitutional rights.  Accordingly, I recommend Defendants' summary judgment motion be granted as to Plaintiff's official capacity claims against Defendants Griffie, Smith, and Rogers.

## VI. CONCLUSION

For the reasons stated above, I recommend Defendant Griffie, Smith, and Rogers' Motion for Summary Judgment (ECF No. 24) be **GRANTED in part and DENIED in part.**

I recommend the motion be **GRANTED** as to Plaintiff's official capacity claims and these claims be **DISMISSED WITH PREJUDICE.**

I recommend the motion be **DENIED** as to Plaintiff's individual capacity claims against Defendants Griffie, Smith, and Rogers regarding denial of medical care.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 27th day of May 2020.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

22